The next case on our docket is Brisco. Thank you, Your Honor. William Evans for Antoine Brisco. I'd like to reserve two minutes of time and I'll keep my eye on the clock. Particularly given the liberal standards that apply to pro se plaintiffs, the district court's screening dismissal of the ADA claim and its grant of summary judgment against the Eighth Amendment claim were both wrong and should be reversed. On the ADA claim, there are three important points. First, this court has long held that Title II covers virtually any prison service or program, so Mr. Brisco's allegations that he was denied safe and accessible transportation satisfy the program or service element. Second, under equally settled precedent, Mr. Brisco's allegations that defendants denied him a reasonable accommodation request without any investigation, in fact, with profanity and force, satisfies the because of and deliberate indifference elements of the claim. Third, Mr. Brisco did not need to allege a policy at the prison violating the ADA for his claim. Duvall makes clear that respondeat superior liability applies to the prison, but even if it were required, Mr. Brisco's allegations of an unwritten policy at the prison violating the statute combined with detailed allegations of conduct by multiple prison officials consistent with such a policy is enough to at least require that the claim be answered. On the Eighth Amendment claim, I'd like to make two points. First, the district court found disputes of fact on both the objective and the subjective prongs of the claim that's at ER 8-9, and that should have required denying summary judgment. And the district court's findings were compelled by this court's precedent. Viewing the record in the light most favorable to Mr. Brisco, a jury could find that Bill O'Connor was aware that basic steps could have better guaranteed Mr. Brisco's safety, but he knowingly refused to take those steps. Counsel, I want to make sure that I understand on one point your argument correctly, and that is that the dropped throne part is essentially to you irrelevant, that even if your client had averred that he was dropped or accidentally dropped as opposed to thrown, your client still should have been allowed to proceed based on the other facts. Am I reading your brief correctly? That's correct. And I think that flows from the Wilk case, for example. I'd look at Wilk at 1-1-5-0, which says that even a failure attack can be enough for this kind of deliberate indifference claim. And if you look, for example, at Frost, too, the idea there was that prison officials were aware that the plaintiff who had mobility issues needed accommodations in the form of rails in the shower facilities that he would otherwise be exposed to danger, and they did nothing. So an affirmative act of that kind, an intentional force, isn't required. What's necessary is knowledge of a significant risk of serious harm and deliberate indifference to that risk. So the fact that the proximate cause of the harm was accidental isn't material to the claim. It may make the facts worse if it were an intentional throw. But you've also argued that if I'm remembering your brief correctly, that if there is any type of quote-unquote ambiguity in the claim, the word thrown is certainly in there and in the light most favorable to your client. We should read it as thrown. Absolutely, Your Honor. Is there any, I mean, the Eighth Amendment claim was decided on summary judgment. So is there any evidence that the officers threw him as opposed to negligently dropping him? There's no evidence other than the declarations from both sides in this case, which are, as you'll, as you know, they're starkly opposed. If you look at SCR 228 to 33, that's Bill Akana's declaration and statement of facts, and it tells a starkly different story, which I think just emphasizes the fact that at summary judgment, there's a material dispute of fact about what happened here. I mean, Bill Akana said that there was no incident whatsoever. There was no injury that occurred. That's hard to believe in light of the medical records that are in there, that Mr. Briscoe submitted at summary judgment and that are before the court. But at the very least, there's a material dispute of fact about what happened. But Mr. Briscoe never unequivocally says that he was thrown, right? He says either thrown or dropped. He says thrown or dropped. I don't think that there's, I mean, even if the question is whether or not that's intentional or accidental conduct, I actually think that being thrown or dropped is both consistent with intentional conduct to the, if one thought that that were material to the claim. But again, I don't think that an intentional forcible act is necessary for the claim to succeed. If it was accidental, I mean, wouldn't it be more negligence than deliberate indifference? It seems like these two officers, they knew they were violating the policy, but they thought we can transport him. We can lift him up together, put him in the car. Yes, we should do, we know better, but we think we can do this. And in fact, they did do this correctly or at least safely four out of the five times he was shuttled back and forth. Unfortunately, they didn't, they dropped him and he got injured. Doesn't that suggest negligence as opposed to deliberate indifference? I don't, I don't think so. Because again, the focus of the claim here is on being aware of the risk of not using the wheelchair lift and nonetheless deliberately going straight into that risk. So the fact that the, that the injury then manifests because of an accident rather than adding on to the risk by intentionally throwing him doesn't, I think, preclude the Eighth Amendment claim. Again, think about the scenario in Frost. The prison officials there didn't do anything and there was still a viable Eighth Amendment claim. The fact that they did not take the precautions necessary to ensure that he wouldn't slip is enough for an Eighth Amendment claim. So clearly the difference between accidentally dropping him and throwing him, I don't think that that, I don't think that that's actually material to the basics of the claim. I mean, Counsel, you're, if I may interject a quick question. Counsel, as I understand your argument, you were saying that whether they dropped him or threw him, they're at least reckless in not giving him the proper equipment, not using the proper equipment to, to move him. That's absolutely right, Judge Gould. And again, I mean, thinking of it it's the fact that they were told that they needed to use an accessible van as the prison policy requires. They were told multiple times by Mr. Briscoe and they responded by cursing him out and dragging him out of. Well, you've also, you've also added, I mean, your client also alleged not just that they knew he was in a wheelchair. Somebody can be in a wheelchair for many reasons, but that as I read it, your client I'll avert that he told them he was in a wheelchair because he had a spinal cord injury. That's right. And if you look at FPR 33, for example, there are medical records verifying that allegation says that he is incomplete paraplegia and he is unable to ambulate. So it isn't, it isn't simply an allegation there. There is documentary evidence supporting that aspect of the claim. And again, I think the focus is knowing the serious risk of harm that would come from not using accessible transportation and going straight into the risk. And whether or not the risk ends up manifesting because of an accident or because of intentional conduct may go to the amount of damages. It may go to how egregious the conduct is, but for the threshold Eighth Amendment standard, I don't think that it's You're referring more to the objective basis of, well, they should have known the risk, but you also have to show they subjectively were reckless. And here, I mean, you can thank these two officers. They're not medical professionals. They may, I don't know if they're big guys or not. They think, look, we're two big guys. We can lift them up carefully, put them in the car, put the seatbelt on, and we can do this. You know, we're big guys. This isn't too tough. Obviously, they were wrong. But, you know, doesn't that suggest, again, more negligence? I don't think they were subjectively, you know, reckless in thinking that. If the record viewed in the light most favorable to Mr. Briscoe suggested that that was their response, then it may be a closer case. But in fact, the record shows that there was a policy directly on point directing them to use accessible transportation. They were asked several times and told by Mr. Briscoe that he was afraid of injury, and they responded with profanity and dragging him out of the wheelchair without even a moment's reflection about whether or not it might be possible to accommodate him. And I think under this court's cases, that is a classic deliberate indifference claim. I see that I have about a half minute left. I'm happy to continue asking questions, but otherwise, I would reserve the time for rebuttal. Okay. Good morning, Your Honors. This is Dan Torrens. I'm ready to proceed. May it please the court. I represent defendants, appellants, appellees, Shin and Viacana. We submit that the trial court granted summary judgment in this case and dismissed Mr. Briscoe's claims under both the Americans with Disabilities Act and with the Eighth Amendment. As the court is aware, this is a case where Mr. Briscoe alleges that as a result of a failure to provide an accommodation that he was injured. First off, I would like to point out one of counsel's arguments today was with respect to interpretations under the Duval case. A careful reading of the briefing in this case, Your Honors, will show that Duval, for the first time, presented with arguments of respondent's superior liability that did not appear in the answering brief. And those types of arguments are impermissible to be presented in the reply brief. In addition, the arguments provided by Mr. Briscoe with respect to Duval essentially mistakes some of Duval's holdings. Duval did hold that ADA claims can be brought against municipalities and institutions in several different ways. But the briefing provided by Mr. Briscoe here is misleading because the specific claim essentially has two separate legs. One is that the person citing the discrimination was discriminated against based on the nature of his disability status. And two, that resulting denial of a program or benefit directly led to injuries that are sustained. So what they're essentially arguing is trying to combine these two elements when they're trying to put forth this argument that the simple denial of a request was a denial of the policy. It's not. What we're simply dealing here is with the denial of an accommodation. And as some of the court's questions were direct about in this case, there's no evidence in this case to support a direct need for the correctional officers here to provide a wheelchair access vehicle. Yes, as the district court found, there was a policy in place. But the evidence that's on record here indicates that a wheelchair access vehicle was not was not available at the time. So it's just too simply broad a step. Counsel, I have a question for you. A wheelchair access vehicle wasn't available. Yes, Your Honor. That's the evidence in the record. Does the record show whether the prison had the capability to rent a wheelchair access vehicle? Your Honor, the record does not indicate that. But certainly, I think if we're giving every benefit to Mr. Briscoe as we are at the briefing stage, that common sense would dictate that something would have been possible. But the issue here isn't whether something was possible, but whether the correctional officers in this case showed a deliberate indifference, with the deliberate indifference being that they were knowledgeable that there was a substantial risk of serious harm to Mr. Briscoe. Counsel, do you concede that if there were admissible evidence that the correction officers deliberately threw Mr. Briscoe that on the Eighth Amendment claim that would get him passed summary judgment? Under the hypothetical that you posed here, Your Honor, I'm compelled to answer yes. Okay, so then let me ask you a question. Rule 8 of the Federal Rules of Civil Procedure allows claims to be asserted in the alternative. And certainly, Mr. Briscoe is pro se. With regard to in a variety of places where he avers what happens, he says thrown or dropped. Rule 8 allows claims to be asserted in the alternative. And if a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. And then he averred that. And so part of the difference between dropped and thrown might be someone's scienter that only they're aware of. Why isn't it enough that he continually used the word thrown but allowed for the possibility that it might have been dropped? Why doesn't that get him passed summary judgment given that alternative means of asserting a claim are specifically allowed by the rules? Your Honor, I believe that the district court judge accurately referenced this in the ruling when she referenced the internal inconsistencies with respect to the record. How does internal consistencies help you at summary judgment? This is not a case where somebody is deposed, gives an answer in a deposition, and then later tries to avoid summary judgment by later doing a declaration that's inconsistent with his deposition. That's called, I think, the sham affidavit rule. But why would that be applicable here where we're not looking at a deposition later contradicted by a statement under oath? And again, I think the district court addressed this point in her ruling where she references that internal inconsistencies and a party's own testimony can create issues of material fact. And then the necessity of choosing between two conflicting versions of a material fact does not defeat the standard for summary judgment. So even given counsel's argument that Mr. Briscoe, as a prisoner in this case, has allowed broad latitude with respect to his allegations of facts, it's not carte blanche. But counsel, couldn't the difference between thrown and dropped depend on the state of mind of the actor? Well, yes, Your Honor. And I think that's one of the issues here with respect to- And back in the days when I used to try cases, I have a recollection of jury instructions that told the jury you often don't have direct evidence of a person's intent. And that's why you have to determine as a matter of fact what the person's intent was when they acted. And isn't this just a variant of that? They were told about the spinal cord injury. They swore at him. They said, we're at the end of the shift. We don't want to stay on overtime. And then they did an act, which depending on their intent, could have been thrown or dropped. And why wouldn't that be up to the trier of fact? Why isn't this sufficient to get past summary judgment on thrown? Well, because on its face, Your Honor, and what we haven't talked about yet is the original allegations in the complaint, which alleged in part that it was a loss of balance. And we've had some questions today relating to whether this is what we're talking about really here is negligence. And this is not a negligence case. With respect to the ADA or Eighth Amendment, there are fairly high standards here. We haven't talked about the Farmer case. But in the Farmer case, what we're really talking about is that we're really approaching the threshold of whether a defendant correctional officer in a case like this is leading up to some sort of criminal type culpability. And that's not really here. And I want to just address that subjective element briefly, because it hasn't been addressed quite yet. But in the record that we have with the materials provided by the defendant, the economy, as it has been accurately stated, there wasn't an incident that occurred. But that's not the summary judgment element that we're talking here. What we're talking about here is for deliberate indifference. And the fact that although it's disputed, the economy makes the statement that he wasn't aware that there were going to be issues, didn't intend for anything to happen, didn't observe anything happen. For the high burden that we have under deliberate indifference, even at the summary judgment stage, Your Honor, it does defeat that. I do hope I have answered the question. Counsel, I have a question for you. Yes, Your Honor. First of all, why aren't the guards, the prison personnel, why aren't they deliberately indifferent about not getting him a wheelchair van or a van with a lift? Because they seem to have intentionally said, well, we're not going to do that. We don't have the time. Well, Your Honor, we obviously disagree with that recitation of facts. But for purposes of our argument today with respect to what we're analyzing, it goes back to the position that we raised originally, which was the denial of an accommodation does not rise to the level of being a discriminatory status against someone who is in a wheelchair. Also, I had a question. Please. On your statement that earlier, that his statements were conflicting. I wonder how a person in his position who's being carried by these two officers could know when they drop, when they throw him or drop him. How could he ever know if he was being thrown or dropped? And all he can know is they were holding him and moving him. And then their hands let go of him and he fell. How could he ever, how could a claimant like that ever be able to say definitively, they threw me or they dropped me? Well, in this case, Your Honor, the point is that in the original complaint followed by Mr. Briscoe, he alleged that the correctional officer there, that there was quotes, a loss of balance call causing him to fall. To answer your question directly, I think the reality is the only people who are going to know whether those correctional officers intended to drop or throw Mr. Briscoe are the correctional officers. And the record is that they have denied doing so. And I see, sorry. I said, thank you. Thank you. And I do see that I'm out of time. So I do thank the panel and I do ask that this court affirm the district court's granting of the summary judgment. Thank you. Okay. Let's see. Do we have a rebuttal? If I may briefly, Your Honor, I just want to make three quick points. First, I think I heard my friend say that there's no duty to provide an accommodation from someone in a wheelchair in this circumstance making the request. If you look at Gorman, for example, which this court, the case that this court has relied on in McGarry and Lee, it's directly on all floors. It explains in detail why denial of a reasonable accommodation request for wheelchair accessible transportation to someone who's been arrested is a classic ADA claim. It's indistinguishable from this case and this court has cited it repeatedly. I heard a suggestion that we had somehow waived arguments about responde at superior. That's not correct. If you look at the blue brief at 33 to 35, we squarely made the argument that an ADA claim is not like a Monell claim in this respect that responde at superior liability applies to the prison. We expanded on that by honing in on Duval in the reply brief, but we clearly preserved the argument in our opening brief. And then finally, I would just to respond to Judge Bennett's remarks. I think it's absolutely correct that it's reasonable to wonder whether someone can know in this circumstance whether they've been intentionally thrown or dropped. I mean, presumably Mr. Briscoe couldn't even see Duran and Villicana. They were dragging him into the van. They were probably behind him. It's difficult to know whether or not the force that he experienced was intentional or not. I think, you know, especially given the medical records at FER 42 and 45 that show the extent of the MRI results and the record of his surgeries, I think that record of injury combined with the allegations is certainly enough to create a jury issue about Mr. Villicana's mental state and whether or not this conduct were deliberate. To the extent that's even material to the claim, as we've said, we think that there could be a viable Eighth Amendment claim here, even if he were accidentally dropped in this circumstance. With that, we'd ask that the decision as to both ADA claim and the Eighth Amendment claim be reversed. Thank you, Your Honor. Yeah, thank you, Counsel. Well, this case will be submitted.
judges: GOULD, BENNETT, LEE